New York Trust Company, as Trustee, Respondent, *v.* Nina E. Weaver et al., Appellants, and Lillie D. Ernsberger et al., Respondents.

Argued March 2, 1948; decided May 21, 1948.

*Ray H. Shoemaker* and *David Hantgan* for appellants. I. The 1927 document was intended to modify the 1926 trust indenture. II. The trust indenture could not be modified, extended or enlarged without the written consent of all persons beneficially interested in the trust as required by section 23 of the Personal Property Law. (*Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358; *Graham* v. *Manufacturers Nat. Bank*, 261 App. Div. 46; *Cram* v. *Walker*, 173 App. Div. 804; *Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Smith* v. *Title Guar. & Trust Co.*, 287 N. Y. 500; *Gage* v. *Irving Bank & Trust Co.*, 222 App. Div. 92, 248 N. Y. 554.) III. The settlor did not by the 1927 agreement dispose of his expectant interest in the corpus of the trust. (*Bennett* v. *Garlock*, 79 N. Y. 302; *Martin* v. *Funk*, 75 N. Y. 134; *Central Trust Co.* v. *Gaffney*, 157 App. Div. 501, 215 N. Y. 740; *Matter of Wolanski*, 157 Misc. 470.) IV. The 1926 indenture if modified, extended and enlarged by the 1927 document, unlawfully suspends the absolute ownership of personal property. (*Bankers Trust Co.* v. *Topping*, 180 Misc. 596; *Blake* v. *Mattern*, 186 App. Div. 488; *Underwood* v. *Curtis*, 127 N. Y. 523; *Matter of Durand*, 250 N. Y. 45; *Matter of Green*, 146 Misc. 530, 263 N. Y. 575; *Schettler* v. *Smith*, 41 N. Y. 328; *Ward* v. *Ward*, 105 N. Y. 68.)

*A. Hayne deYampert* and *Dana C. Backus* for The New York Trust Company, respondent. I. Whether the settlor intended

by the 1927 agreement to modify the 1926 indenture is wholly immaterial. II. The 1927 agreement revokes neither the whole nor any part of the trust created by the 1926 indenture and section 23 of the Personal Property Law is, therefore, not applicable. (*New York Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33.) III. The 1927 agreement disposes of the settlor's reversion under the 1926 indenture. IV. The trust instruments do not suspend the absolute ownership of the trust property for more than two lives in being, forbidden by section 11 of the Personal Property Law. (*Matter of Bruckheimer*, 294 N. Y. 31; *Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Bird* v. *Pickford*, 141 N. Y. 18; *Crooke* v. *County of Kings*, 97 N. Y. 421; *Bailey* v. *Bailey*, 97 N. Y. 460; *New York Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33; *Schettler* v. *Smith*, 41 N. Y. 328; *Matter of Friend*, 283 N. Y. 200, 283 N. Y. 775; *Matter of Trevor*, 239 N. Y. 6; *Tiers* v. *Tiers*, 98 N. Y. 568.)

. *Arthur W. Procter* and *Caleb A. Harding* for Earl R. Ernsberger, Jr., and others, respondents I. There was no modification of the 1926 indenture in whole or in part and section 23 of the Personal Property Law does not apply. (*New York Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33; *McCurdy* v. *New York Life Ins. & Trust Co.*, 83 Hun 612, 151 N. Y. 667; *Title Guar. & Trust Co.* v. *Haven*, 214 N. Y. 468; *Matter of Albro*, 165 Misc. 486; *First Nat. Bank & Trust Co.* v. *Palmer*, 235 App. Div. 593.) II. The agreement of 1927 disposed of the settlor's reversion under the indenture of 1926. (*New York Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33; *First Nat. Bank & Trust Co.* v. *Palmer*, 235 App. Div. 593; *De Graff* v. *Joyce*, 172 Misc. 919; *McCurdy* v. *New York Life Ins. & Trust Co.*, 83 Hun 612, 151 N. Y. 667; *National Park Bank of N. Y.* v. *Billings*, 144 App. Div. 536, 203 N. Y. 556.) III. The indenture of 1926 and the agreement of 1927 do not violate the rule against perpetuities. (*New York Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33; *McCurdy* v. *New York Life Ins. & Trust Co.*, 83 Hun 612, 151 N. Y. 667; *Genet* v. *Hunt*, 113 N. Y. 158; *Bishop* v. *Bishop*, 257 N. Y. 40; *Fargo* v. *Squires*, 154 N. Y. 250; *Matter of Mount*, 185 N. Y. 162; *Looram* v. *Looram*, 269 N. Y. 296.)

*Samuel Weisman,* guardian ad litem, for infant respondents. I. The 1927 indenture did not effect the beneficial interest of settlor's son. The change related solely to the reversionary interest of settlor. *(Smith* v. *Title Guar. & Trust Co.,* 287 N. Y. 500.) II. The 1927 indenture related solely to the reversionary interest of the settlor. It disposed of his interest in the trust fund. III. The rule of perpetuities was not violated by the two indentures. Income payable to more than two persons during the measuring lives does not violate the statute. *(Schermerhorn* v. *Cotting,* 131 N. Y. 48; *Morris* v. *Morris,* 272 N. Y. 110.)

LEWIS, J. The trustee of two *inter vivos* trusts has instituted this action to determine their validity and construction. The answer and counterclaims interposed by the defendants-appellants — which pleaded the invalidity of the second trust agreement — were dismissed at Special Term upon a motion by the plaintiff-trustee for summary interlocutory judgment. Special Term ruled that the trusts were valid and ordered the trustee to account. The Appellate Division unanimously affirmed the interlocutory judgment and the order of Special Term. Thereupon, accounts were filed by the trustee and Special Term ordered final judgment approving those accounts. Pursuant to leave granted by us this appeal — taken directly from the final judgment mentioned above — seeks to review only the prior determination of the Appellate Division which unanimously affirmed the interlocutory judgment and order of Special Term.

From the allegations of the complaint it appears that in April, 1926, Earl R. Ernsberger, as settlor of a trust, delivered to the plaintiff trustee $200,000 under an agreement which provided that the income therefrom should be paid to his wife, Mary Hope Ernsberger " until her death or remarriage ". The trust agreement also made provision for two contingencies as follows:

" If the party of the first part [the settlor] shall be living at the time of the death or remarriage (whichever event shall first occur) of said Mary Hope Ernsberger, *then upon such death or remarriage said trust shall in any and every event terminate, and the Trustee is directed to thereupon assign, transfer and pay over the principal of said trust fund to the party of the first part, absolutely and forever.*

" In the event, however, that the party of the first part shall be deceased at the time of the death or remarriage (whichever event shall first occur) of said Mary Hope Ernsberger, then the Trustee is directed to pay the net income of said trust fund, in quarterly installments of equal amount, or as nearly equal as possible, to Earl R. Ernsberger, Jr., son of the party of the first part, for and during the term of his natural life, and upon the death of said Earl R. Ernsberger, Jr., said trust shall terminate and the Trustee is directed to assign, transfer and pay over the principal of said trust fund, in equal shares, to the children then living of said Earl R. Ernsberger, Jr., and to the issue then living of deceased children of said Earl R. Ernsberger, Jr., the issue of deceased children taking per stirpes and not per capita." (Italics supplied.)

The settlor reserved no power to alter or revoke the 1926 trust agreement quoted in part above.

On November 5, 1927, the settlor as " party of the first part " and Mary Hope Ernsberger as " party of the second part " executed an instrument, captioned " AGREEMENT FOR MODIFICATION OF TRUST AGREEMENT " which provided in part:

" It is now hereby agreed * * * that said indenture [the 1926 trust indenture] * * * is hereby expressly confirmed and ratified in all respects, except and subject only to the following modifications and revocations, *none of which in any respect affect the beneficial interests in said trust of the said Earl R. Ernsberger, Jr.*:

" That the provisions of said indenture for creation of trust fund, in so far as the same provides for the termination of said trust on the death or remarriage of said Mary Hope Ernsberger, prior to the death of party of the first part herein, and the transfer, in either event, of said trust fund to said party of the first part, be, and the same are hereby revoked, and in substitution thereof it is agreed that in the event of the death of the party of the second part, prior to the death of first party herein, said trust shall continue thereafter for the uses and benefits of said Earl R. Ernsberger, Jr., during his natural life, and that, upon the death of the latter, said trust shall terminate, and said Trustee shall be, and it is now directed then and on the happening of said event, to assign, transfer and pay over the prin-

cipal of said trust fund, in equal shares, to the children then living of said Earl R. Ernsberger, Jr., and to the issue then living of deceased children of said Earl R. Ernsberger, Jr., the issue of deceased children taking per stirpes, and not per capita; but provided further that if party of the second part hereto shall be deceased before the death of said Earl R. Ernsberger, Jr., and the latter, at his decease, shall leave no issue of his body, or descendants thereof, but shall leave a lawful widow, said trust fund shall be distributed by said Trustee, and the latter is hereby directed to assign, transfer and set over said principal as follows; viz.:

" To the lawful widow of said Earl R. Ernsberger, Jr., if any he leave, one-third of said fund.

" To the party of the first part if still living, otherwise to the heirs of his body * * * one-third of said principal fund, and

" Likewise, to the lawful heirs of party of the second part * * * one-third of said trust fund. * * *

" Provided further, that said trust agreement shall be further supplemented and modified by the additional provision that should the said party of the second part hereto remarry, prior to the death of the first party hereto, then, and in that event the said Trustee named in said trust agreement shall pay to party of the first part one-half of said net income of said fund, and the remaining one-half thereof to the said party of the second part, until the termination of said trust agreement, or the death of party of the second part, as hereinbefore and hereinafter provided.

" And, provided further, that * * * in the event of the death of party of the second part, or her remarriage, in either event, before the death of party of the first part, one-half of the net income of said trust fund shall be paid by said Trustee to party of the first part, during his natural life, but thereafter said one-half of said net income shall be paid to said Earl R. Ernsberger, Jr., during the remainder of his natural life." (Italics supplied.)

At the time the 1927 agreement, last quoted above, was entered into, Earl R. Ernsberger, Jr., was twelve years of age and accordingly did not execute a consent thereto. The trustee —

administering the trusts under the *1926* agreement — paid the income therefrom to Mary Hope Ernsberger until her death on November 3, 1937, at which time the settlor was still living. As Mary Hope Ernsberger had not remarried, the trustee — subsequent to her death and in accord with the terms of the *1927* agreement — paid one half the income from the trust to the settlor and the remaining one half to his son Earl R. Ernsberger, Jr.

On September 8, 1944, the settlor died intestate. Thereafter the trustee commenced this action to determine the validity and construction of the 1926 and 1927 instruments.

Martha Ernsberger — who with her three daughters were named defendants and are appellants before us — allegedly had been married to the settlor prior to his marriage to Mary Hope Ernsberger and prior to his execution of either of the trust agreements mentioned above. Upon this appeal the appellants do not dispute the validity of the trust entered into in 1926. Their claim is that when Mary Hope Ernsberger died in 1937, prior to the death of the settlor, the 1926 trust terminated; that the trustee should then have paid over the principal of the trust fund to the settlor in which event the appellants would have become entitled to a share of the principal of the trust as heirs of the settlor under the laws of Texas in which State the settlor resided on the date of his death.

In support of their position that the 1927 agreement was invalid it is argued by the appellants (1) that the 1927 agreement attempted to revoke and to modify parts of the agreement of 1926 and that, inasmuch as Earl R. Ernsberger, Jr.— a beneficiary under the 1926 agreement — did not execute a written consent to such a modification, there was a failure to comply with section 23 of the Personal Property Law and, accordingly, that the modification was ineffective; and (2) that even if the 1927 agreement was valid, the two instruments unlawfully suspend the ownership of the property beyond two lives in being at the time of the creation of the trust.

The first challenge by the appellants to the validity of the 1927 agreement depends upon the application of section 23 of the Personal Property Law which provides: " § 23. *Revocation of trusts upon consent of all persons interested.* Upon the writ-

ten consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof.''

We agree with the rulings made at Special Term and at the Appellate Division that the change made in the 1926 trust agreement by the agreement of 1927, was not such as to necessitate the written consent thereto of Earl R. Ernsberger, Jr. Although the settlor entitled the 1927 instrument as '' A Modification Agreement '', a study of that instrument prompts the conclusion that there was no revocation of those provisions of the 1926 agreement which created beneficial interests in favor of persons other than the settlor. Under the 1926 agreement, the settlor's wife, Mary Hope Ernsberger, was to receive the income of the trust fund until her death or remarriage. Alternate provisions were made for the administration of the trust after her death or remarriage depending upon whether the settlor was alive at that time. In the event the settlor had died prior to that time, provision was made for a life income to Earl, Jr., with remainder to his issue. However, in the event the settlor was still living at the time of the death or remarriage of Mary Hope Ernsberger, *the trust was to terminate and the principal returned to the settlor.* Thus we see that, according to the terms of the 1926 agreement, in the event the death or remarriage of Mary Hope Ernsberger preceded the death of the settlor, provision was made for a reversion of the trust estate to the settlor. (Real Property Law, § 39.) If the settlor died prior to the death or remarriage of Mary Hope Ernsberger, certain benefits arose in favor of their son Earl Ernsberger, Jr.

In 1927, the second instrument was executed in which it was expressly provided that the 1927 agreement was *not* to '' affect the beneficial interests in said trust [the 1926 trust] of the said Earl R. Ernsberger, Jr.'' under which, as we have seen, trust benefits had been given Earl R. Ernsberger, Jr., in the event the death of the settlor occurred prior to the death or remarriage of Mary Hope Ernsberger. The 1927 agreement affected only a situation arising if the death or remarriage of Mary Hope Ernsberger occurred during the lifetime of the settlor. In that event,

rather than to provide for a reservation of a reversion to the settlor and the termination of the trust at such time — which had been the plan prescribed under the 1926 agreement — the 1927 agreement made provision for the disposition of the settlor's reversionary interest. In other words, the 1927 agreement made no revocation of any beneficial interests created by the 1926 trust agreement except to change the disposition of the interest in that trust which arose in the settlor's favor in the event his wife, Mary Hope Ernsberger died or remarried during his lifetime. In fact, the 1927 agreement "expressly confirmed and ratified in all respects" the earlier trust except for the provision which directed a reversion in favor of the settlor.

Our conclusion is that the change effected by the 1927 agreement in the disposition of the settlor's reversionary interest did not work such a revocation of any provision of the 1926 agreement — within the provisions of section 23 of the Personal Property Law — as to require the consent of Earl R. Ernsberger, Jr. The 1927 agreement did not revoke the trust for the son in any way. All that was done was to dispose of the settlor's reversionary interest reserved by the 1926 agreement. The reversion thus created was an estate belonging to the settlor which he could dispose of as any other type of estate without the consent of anyone. (*New York Life Ins. & Trust Co.* v. *Cary,* 191 N. Y. 33, 39; *Livingston* v. *N. Y. Life Ins. & Trust Co.,* 59 Hun 622, opinion in 13 N. Y. S. 105, on second appeal *sub nom. McCurdy* v. *New York Life Ins. & Trust Co.,* 83 Hun 612, affd. 151 N. Y. 667 on opinion below on first appeal; *National Park Bank* v. *Billings,* 144 App. Div. 536, affd. on opinion below, 203 N. Y. 556; *Farmers' Loan & Trust Co.* v. *Bostwick,* 190 N. Y. 569, and see Chaplin, Suspension of the Power of Alienation [3d ed.], § 139.)

The appellants also challenge the validity of the 1927 agreement upon the ground that the trusts created by the 1926 and 1927 instruments served to suspend the power of alienation beyond two lives in being. (Personal Property Law, § 11.) This contention is based upon the theory that the two instruments provide for payment of income to the settlor's wife, during her life and, upon her death, one half to his son and one

half to him, and that upon the death of the settlor, his son is to receive the entire income for life. This trust plan, say the appellants, measured the trust by three lives and consequently was unlawful. The interpretation thus given these instruments by the appellants is upon the theory that the two instruments must be read together and considered as one in determining the rights of the parties interested in the estate. Concluding, as we do, that the second (1927) instrument made provision merely for the disposition of the settlor's reversionary interest, it follows that it is not necessary to read the two agreements together as a single instrument in determining the number of lives which measure the trusts involved. (*Genet* v. *Hunt,* 113 N. Y. 158, 168, 169; *New York Life Ins. & Trust Co.* v. *Cary, supra,* pp. 38–41; *Farmers' Loan & Trust Co.* v. *Bostwick, supra; Livingston* v. *New York Life Ins. & Trust Co., supra,* p. 108; *Guaranty Trust Co.* v. *New York Trust Co.,* 297 N. Y. 45, 49, 50; and see Chaplin, Suspension of the Power of Alienation [3d ed.] § 139, p. 117.)

Considering separately the 1926 and 1927 agreements — in accord with the authorities cited above — there is in neither instrument a postponement of vesting beyond two lives in being in violation of section 11 of the Personal Property Law.

The judgment and order should be affirmed, with costs to the respondents, payable out of the fund.

LOUGHRAN, Ch. J., CONWAY, DESMOND, THACHER, DYE and FULD, JJ., concur.

Judgment and order affirmed.