JUNIUS S. MORGAN et al., as Trustees, and LEONHARD A. KEYES, et al., as Surviving Executors of HERBERT L. SATTERLEE, Deceased Trustee under a Declaration of Trust made by J. PIERPONT MORGAN, Deceased, for the Benefit of LOUISA P. SATTERLEE, Respondents, v. LEONHARD A. KEYES, as Surviving Executor of LOUISA P. SATTERLEE, Deceased, et al., Respondents, and ELEANOR M. SATTERLEE, Appellant.

Argued April 9, 1951; decided May 24, 1951.

440

*Sol A. Rosenblatt* and *Charles Roden* for appellant. I. The determination below that Mrs. Satterlee impliedly intended by her will to appoint the 1901 fund in further trust has no basis in law or fact. (*Matter of Wittner,* 301 N. Y. 461; *Matter of Battell,* 286 N. Y. 97; *Matter of Kennedy,* 279 N. Y. 255; *Matter of Loew's Buffalo Theatres, Inc.,* 233 N. Y. 495; *Matter of Thompson,* 274 App. Div. 49; *Matter of Piffard,* 111 N. Y. 410; *Matter of Barlow,* 144 Misc. 210; *Chase Nat. Bank of City of N. Y.* v. *Chicago Tit. & Trust Co.,* 155 Misc. 61, 246 App. Div. 201, 271 N. Y. 602; *Overheiser* v. *Lackey,* 207 N. Y. 229; *Post* v. *Hover,* 33 N. Y. 593; *Bradhurst* v. *Field,* 135 N. Y. 564.) II. Since Mrs. Satterlee expressly appointed the 1913 fund, as a matter of law, it may not be held that by the same language she impliedly appointed the 1901 fund to which it did not refer. (*White* v. *Hicks,* 33 N. Y. 383; *Bradish* v. *Gibbs,* 3 Johns. Ch. 523; *Mutual Life Ins. Co.* v. *Shipman,* 119 N. Y. 324; *Duff* v. *Rodenkirchen,* 110 Misc. 575, 193 App. Div. 898; *Weinstein* v. *Weber,* 178 N. Y. 94; *Marsh* v. *Consumers Park Brewing Co.,* 220 N. Y. 205; *Hutton* v. *Benkard,* 92 N. Y. 295; *Lockwood* v. *Mildeberger,* 159 N. Y. 181; *Thayer* v. *Finton,* 108 N. Y. 394; *Beardsley* v. *Hotchkiss,* 96 N. Y. 201.) III. The 1901 trust was measured by two lives in being — Mr. Morgan's and Louisa P. Satterlee's — and therefore it may not be presumed that Mrs. Satterlee intended to violate the rule against perpetuities by adding thereto trusts for the third lives of her daughters. (*Matter of de Varona,* 274 App. Div. 303, 299 N. Y. 726; *Kahn* v. *Tierney,* 135 App. Div. 897, 201 N. Y. 516; *Matter of Harbeck,* 161 N. Y. 211; *Seitz* v. *Faversham,* 205 N. Y. 197.)

*J. Fearon Brown* and *James H. Nichols* for Leonhard A. Keyes, respondent. I. Mrs. Satterlee by her will expressly exercised the power over the 1901 fund; or necessarily must

be held to have exercised the power by reason of section 18 of the Personal Property Law. (*Matter of Thompson*, 274 App. Div. 49; *Lockwood* v. *Mildeberger*, 159 N. Y. 181; *Matter of Davis*, 186 Misc. 397; *Chase Nat. Bank of City of N. Y.* v. *Central Hanover Bank & Trust Co.*, 265 App. Div. 434.) II. The exercise of the power was lawful; it does not unlawfully suspend the estate. (*Looram* v. *Looram*, 269 N. Y. 296; *New York Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33; *New York Trust Co.* v. *Weaver*, 271 App. Div. 776, 298 N. Y. 1.) III. Even if Mr. Morgan's will is read back into the instrument of 1901, there is no unlawful suspension because there were until his death persons in being who could give perfect title and the trust was revocable until his death. (*Williams* v. *Montgomery*, 148 N. Y. 519; *Epstein* v. *Werbelovsky*, 193 App. Div. 428, 233 N. Y. 525; *City Bank Farmers Trust Co.* v. *Cannon*, 291 N. Y. 125.)

*John F. Keating*, guardian ad litem, for Sandra Satterlee Ingalls, respondent. I. Mrs. Satterlee in her will intended to and did pass the $1,000,000 sum referred to in her father's letter declaration of January 2, 1901, which became a part of the sum bequeathed in trust under section 3 of article V of her father's will. (*Matter of Davis*, 186 Misc. 397.) II. Mrs. Satterlee's appointment of the $1,000,000 sum does not violate the unlawful suspension of ownership provisions of section 11 of the Personal Property Law. The period of suspension did not begin until Mr. Morgan's death in 1913. (*City Bank Farmers Trust Co.* v. *Cannon*, 291 N. Y. 125; *Sperry* v. *Farmers' Loan & Trust Co.*, 154 App. Div. 447; *Richardson* v. *Richardson*, 298 N. Y. 135; *New York Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33; *New York Trust Co.* v. *Weaver*, 298 N. Y. 1; *Williams* v. *Montgomery*, 148 N. Y. 519; *Epstein* v. *Werbelovsky*, 193 App. Div. 428, 233 N. Y. 525.) III. Even if Mrs. Satterlee's appointment of the $1,000,000 sum effected an unlawful suspension in respect of Eleanor Satterlee's one-half trust share therein, the court can still carry out her intention in full, without adversely affecting any beneficiary's rights, by marshaling the entrusted property. (*Fargo* v. *Squiers*, 154 N. Y. 250; *Cheever* v. *Cheever*, 172 App. Div. 353; *Matter of Woodward*, 174 Misc. 919.)

DESMOND, J. Plaintiffs brought this action to obtain a judicial settlement of their final accounts as trustees under a declaration of *inter vivos* trust made by J. Pierpont Morgan in 1901. There was no dispute as to the correctness of the accounts as such, but appellant Eleanor Morgan Satterlee, granddaughter of the trustor Morgan, and sole appellant in this court, raised a question, to be discussed herein, as to the disposition of the corpus. Essentially, her position was this: that the will of appellant's mother (Louisa Satterlee, daughter of J. Pierpont Morgan) had failed to exercise the power given to Louisa Satterlee by the will of J. Pierpont Morgan to appoint this fund, so that, as appellant argued, the fund itself, by the terms of the J. Pierpont Morgan will, passed outright, in equal shares, to appellant and her sister, as the only children of Louisa Satterlee. The facts are all undisputed. The trial court decided that appellant's mother had, by her will, validly and effectually exercised a power given her by J. Pierpont Morgan's will, to appoint the remainder of the fund here being accounted for. That exercise of the power, held the trial court, was in the creation, in Mrs. Satterlee's will, of two trusts from the principal of the fund, each for one half thereof, one such trust to run during the life of appellant, and the other during the life of appellant's only sister. In arriving at that conclusion, later unanimously affirmed by the Appellate Division, First Department (no opinion), the Trial Justice rejected certain contentions of appellant, which we will examine herein: first, that Mrs. Satterlee's will shows no intention to appoint the Morgan trust fund in further trusts, and, second, that any doubt as to that should be resolved against the testamentary disposition of the fund by Mrs. Satterlee, since, according to appellant's theory, such a disposition (by way of setting up the new testamentary trusts) would violate the rule against perpetuities.

Examination of the facts starts with a declaration of trust made by J. Pierpont Morgan, in 1901, in a letter from Mr. Morgan to a banking firm in which he was a partner. It directed that the firm, out of moneys it owed him, should set aside the sum of $1,000,000, of which sum he, in the letter, declared himself trustee for his daughter, Louisa P. Satterlee, appellant's mother. A further direction in the letter was that the sum should, during the settlor's life, remain in the firm's business as

a loan bearing 6% interest, such interest, as it accrued, to be paid to Mrs. Satterlee. Finally, the letter commanded that, at the settlor's death, he was to be succeeded as trustee of the fund, by such person or persons as he should name in his will as trustee or trustees of property to be directed in said will to be held in trust for his daughters; and that, after his death, such testamentarily named trustees should hold the $1,000,000 fund upon the same trusts and in the same manner, as should be directed by his will in respect to property left by the will in trust for the daughter. The 1901 trust was duly carried out by the banking firm until, on March 31, 1913, J. Pierpont Morgan died, leaving a will made in January, 1913. (Appellant was born in 1905.)

J. Pierpont Morgan's will made no direct or explicit reference to the $1,000,000 fund here in dispute, but included a provision creating another trust of $3,000,000, income to be paid to his daughter Mrs. Satterlee for life, and remainder, at her death, to her surviving issue '' subject, however, to the power and authority which I hereby give to my said daughter to dispose of said sum of Three Millions of Dollars by her last will and testament among her issue in such shares or proportions and on such lawful trusts as she may think proper.'' It has been held below in this suit and is not now disputed by any party, that, in view of the language of the 1901 trust, the above-quoted language from the will constituted a sufficient direction as to the terms on which the $1,000,000 fund should be held after Mr. Morgan's death — that is, in trust to continue to pay the income to Mrs. Satterlee during her life with the principal, at her death, going to her daughters unless Mrs. Satterlee should, meanwhile, have disposed of it by her will. The only problem, therefore, is as to whether Mrs. Satterlee, who died in 1946, did, by her will made in 1936, validly exercise that power of appointment.

Mrs. Satterlee's will contained no express reference to the $1,000,000 trust, as such. It did, however, contain language which has been correctly construed below as an exercise of her power of appointment as to that fund, as well as to the other ($3,000,000) trust set up for her in her father's will. Article III of Mrs. Satterlee's will begins with a recital that under paragraph 3 of article V of her father's will the principal of a

certain sum in which she had a life interest, was given, upon her death, to her issue, subject to a certain power and authority, etc., and that "therefore I do make the following dispositions: * * * ", etc. The dispositions which follow, in Mrs. Satterlee's will, are those above referred to which create two secondary trusts for her two daughters (appellant and her sister), with remainders over. Appellant makes much of the omission from her mother's will of any specific reference to the $1,000,000 trust. But paragraph 3 of article V of J. Pierpont Morgan's will, which paragraph Mrs. Satterlee recites as the source of her power of disposal, is the paragraph which, while setting up the other ($3,000,000) trust, contains what all concerned have accepted as directions for the carrying on of the earlier made ($1,000,000) trust. Four times, in article III of her will, the Satterlee will refers to "the entire said principal sum" as to which testatrix had a life interest and a testamentary power of disposition. Obviously she knew that this "entire said principal sum" consisted of two funds, totaling $4,000,000. The will nowhere suggests that testatrix intended to leave undisposed of, any property over which she had control. The situation is thus one where, whether or not we conclude that the power exercising language of the Satterlee will expressly covers the $1,000,000 fund, it is legally sufficient for that purpose, and there is no sign of a contrary purpose. Therefore, we could not hold to be erroneous as matter of law the rulings below that testatrix intended by her will to appoint the $1,000,000 fund. Furthermore, section 18 of the Personal Property Law would bring about the same result since, by that statute, "Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator", unless a contrary intent appears expressly or by necessary implication (see *Low* v. *Bankers Trust Co.*, 270 N. Y. 143).

Appellant's other approach is this: she argues that article III, above referred to, of Mrs. Satterlee's will, even if it would bear the construction given it below (as exercising the power of appointment with respect to the 1901, or $1,000,000 trust), should not be so read since, according to appellant, such a reading would result in a violation of the rule against perpetuities. Appellant regards the $1,000,000 trust as being limited first by

the settlor's life, then by Mrs. Satterlee's life after Mr. Morgan's death and until her death, and then, as to half thereof, by this appellant's life. In other words, says appellant, alienability of the fund was, by the 1901 Morgan trust and the Satterlee will, read together, illegally suspended for three lives (Personal Property Law, § 11; Real Property Law, § 42). We assume that would be so if Mr. Morgan, had not, by (the legal effect of) his 1901 declaration of trust, retained for himself a reversion and a right to revoke the trust (see *Chase Nat. Bank* v. *Frazier,* 243 App. Div. 623, affd. 269 N. Y. 541). If Mr. Morgan had, by his 1901 declaration, created a life interest and not a reversion but a remainder, with a power of appointment as to the remainder, then that declaration and the instrument (Mrs. Satterlee's will) exercising the power, would be read together as one, as of 1901, and the total disposition would be limited by three lives (Mr. Morgan's, Mrs. Satterlee's, and the life of one of the latter's daughters). But the 1901 declaration did not dispose of the fund by creating a remainder and a life interest. It carved out a life interest for Mrs. Satterlee, provided that during her life after testator's death the fund would remain in trust for her with new trustees, and then directed that the ultimate disposition would be as dictated by Mr. Morgan's will. No reason appears why the settlor could not, validly, have revoked that trust during his life. During his life, he and Mrs. Satterlee together had full ownership and full right to dispose of the fund. The period of suspension, therefore, did not begin until after the power to revoke ended, at his death (see *Williams* v. *Montgomery,* 148 N. Y. 519, 526). The subsequent trusts were measured by two lives only (those of Mrs. Satterlee and one of her daughters), and the first trust was measured by Mrs. Satterlee's life only, even though the will provided that its continuance after Mr. Morgan's death would be under new trustees. These views are, we think, fully explained and sustained in *New York Life Ins. & Trust Co.* v. *Cary* (191 N. Y. 33, 38–42); *Looram* v. *Looram* (269 N. Y. 296), and *New York Trust Co.* v. *Weaver* (298 N. Y. 1, 10, 11). Other arguments of respondents, pointed toward the same result, need not be considered.

We are informed that appellant died on April 11, 1951, two days after the argument of the appeal in this court. Our

decision will be entered *nunc pro tunc* as of the date of argument, April 9, 1951 (see *Bergen* v. *Wyckoff*, 84 N. Y. 659; *MacLean* v. *Hart*, 238 App. Div. 1, affd. 262 N. Y. 552).

The judgment should be affirmed, as of April 9, 1951, with costs to all parties appearing separately and filing separate briefs, payable out of the fund.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and FROESSEL, JJ., concur.

Judgment affirmed.