*543 OPINION OF THE COURT
Marie M. Lambert, S.
In this proceeding to settle the final accounts of the executors and inter vivas trustees, a construction is requested of the revocable inter vivas trust agreement created by the testatrix, to determine the disposition of the trust residuary. The application is not opposed.
The decedent died on June 19, 1985, leaving a will dated September 22, 1983 and codicil dated May 20, 1985 which were admitted to probate in this court. Letters testamentary were granted on November 22, 1985.
On November 4, 1971 the decedent entered into an agreement between herself as settlor, and John A. Hoyt, Jr. and Marie G. Lane, as cotrustees. The trust agreement was amended on March 23, 1979 to appoint Sheilah L. Malafronte as successor cotrustee due to the death of Marie G. Lane on January 20, 1979.
Pursuant to its terms, the trust income was payable to settlor for life. The trust agreement then provides:
"second: If my sister, Alice Prout, shall survive me, to pay to my Executors and Trustees designated under my Last Will and Testament, or the survivor of them, all the rest, residue, remainder and balance of the net trust funds on hand at the time of my death, in trust, nevertheless, to hold the same during the life of my sister, Alice Prout, as directed by Article 'Seventh’ of my Last Will and testament and administered as directed by my said Will, dated June 18, 1971.
"In the event, however, my sister, Alice Prout, shall not survive me, to pay to my Executors and Trustees designated under my Last Will and Testament, or the survivor of them, all of said rest, remainder and balance of the net trust funds on hand at the time of my death, for division disposition and payment by said Executors and Trustees, as directed by Article 'Seventh’ subdivision (1) and (2) of my Last Will and Testament.”
Alice Prout predeceased the decedent and the will described in the trust was superseded by a series of wills over the years. An examination of the testamentary instruments admitted to probate discloses that the legatees and their respective shares are not identical under the 1971 will and the admitted instruments. Petitioners suggest that decedent intended to pour over the trust residuary to the 1971 will only if that will was in fact probated, and that the revoked instrument was clearly *544 invalidated for all purposes, including its use as a receptacle for the trust residuary. A construction of the trust is sought to allow the trust residuary to be distributed in accordance with the residuary provisions of the probated instruments rather than pursuant to the provisions of the revoked will.
EPTL 3-3.7 authorizes the pour-over from a will to an inter vivas trust. There is no statute in New York regulating the reverse "pour-over” from an inter vivas trust to a will. "It should be noted that a bill designed for this purpose was introduced at the 1964 legislative session but failed of passage, apparently because such pour-overs were thought valid under case law and no legislative correction needed. Actually, there is no precise decisional authority validating a pour-over from a living trust to a will (but see, Morgan v. Keys, 1950, 198 Misc. 984, 99 N.Y.S.2d 820, affirmed 277 App. Div. 1114, 101 N.Y.S.2d 939, affirmed 302 N.Y. 439, 99 N.E.2d 230; In re Smith’s Will, 1952, 279 App. Div. 140, 108 N.Y.S.2d 290, affirmed 304 N.Y. 612, 107 N.E.2d 92, which merely held that appointive property may be poured-over from an inter vivas trust to a will (leaving open the question of what the result would be if the donee of the power of appointment predeceased the donor)). It may be argued, however, that In re Fowles’ Will, supra, strongly suggests the validity of such pour-overs.” (Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 3-3.7, at 503 [emphasis in original].)
In determining the issue in the present case, it is helpful to understand EPTL 3-3.7 which applies to a pour-over from a will to a trust. That section’s predecessor, which was reinacted without substantial change, resolved what was considered a "problem” area, by authorizing "a pour-over to an inter vivas trust even though the trust instrument is amendable (and actually amended) after the will is executed (and, where the testator so directs, even after his death) with respect to property interests of the trust beneficiaries” (Rohan, Practice Commentary, op. cit., at 502.)
EPTL 3-3.7 provides as follows:
"(b) The testamentary disposition or appointment is valid, even though:
"(1) The trust instrument is amendable or revocable, or both, provided, however, that the disposition or appointment shall be given effect in accordance with the terms of the trust instrument, including an amendment thereto, as they appear *545 in writing on the date of the testator’s death and, where the testator so directs, including amendments to the trust instrument after his death, if the instrument evidencing such amendment is executed and acknowledged in the manner herein provided for executing and acknowledging the instrument which it amends.”
There is a lengthy and historical discussion of the law with respect to incorporation by reference in the Bennett Commission Reports (2d Rep, Temp St Commn of Law of Estates, 1963 NY Legis Doc No. 19, at 282-348). The Commission recommended (op. cit., at 311) that the statute validate pour-overs to a trust even if the trust is amendable or revocable, provided that the bequest shall be given effect in accordance with the terms of the trust as they appear in writing on the date of death of the testator. This theory supports a determination herein that the pour-over should be to the last will of the decedent that was actually admitted to probate.
In any construction, the prime consideration is to ascertain the intent of the testatrix, and the meaning of language employed in the instrument. Such intent will be given effect unless it is contrary to law or public policy. (Matter of Carmer, 71 NY2d 781; Matter of Nicol, 24 AD2d 191, mod 19 NY2d 207; Matter of Thall, 18 NY2d 186; Matter of Fabbri, 2 NY2d 236.) The attorney who prepared the trust instrument and all of the decedent’s wills has submitted an affidavit in which he states that he had told the decedent that she did not have to amend the trust each time she executed a hew will "because the June 10, 1971 will was or was about to be revoked. The Trust assets would be distributed in accordance with the will then in existence at the time of her death.” He avers that the decedent intended the remainder of the trust to be disposed of in accordance with the residuary provisions of her most recent will, which reflected her current wishes for distribution. Finally he states that "it seems illogical that Mrs. Gillespie who took great pains in revising and updating her will to reflect present circumstances would allow almost two-thirds of her gross estate (62% of her gross estate were assets of the revocable Trust) to be disposed of in accordance with a will whose testamentary plan she subsequently found unacceptable and deviated from.”
It is well established that a will is revocable and ambulatory during the lifetime of the decedent. EPTL 1-2.18 defines a will as an ambulatory instrument totally inoperative and ineffective until the death of the testator. The statute reflects long *546 standing case law to the same effect. Accordingly, since the testamentary instrument mentioned in the trust agreement was revoked by subsequent wills, it could be argued that the disposition of the settlor’s interest in the trust remainder must fail because of invalidity of the revoked will. Nevertheless, the result would still be the same, since the disposition having failed and no other disposition having been made for its distribution, the undisposed trust residuary would revert to the settlor’s estate. It is generally recognized that making a will raises a strong presumption against intestacy and against leaving property undisposed. (Matter of Manning, 133 Misc 695, affd 227 App Div 644, affd, 252 NY 540.) Here the testatrix expressly attempted to dispose of the trust residuary under the provisions of her will. Having died testate, this intent may be given effect pursuant to the provisions of her will dated September 23, 1983 and codicil dated May 20, 1985 admitted to probate in this court.
The trust is so construed.
The court has reviewed the lengthy and detailed affidavits of legal services submitted by the attorneys for the executors and trustees. It is clear that the coexecutor-cotrustee, although an attorney, did not perform legal services for the estate or trust, other than some preliminary services in connection with the probate proceeding. Moreover, the fiduciary is not a member or an associate of the law firm and will in no way share in the fees awarded to them. The services performed were necessary and the requested fees are fair and reasonable and allowed on the basis of all of the relevant factors (cf., Matter of Freeman, 34 NY2d 1; Matter of Potts, 213 App Div 59, affd 241 NY 593). Accordingly, the fees are allowed in the full amounts requested.
The accounts being proper in all respects and there being no objections thereto, they are approved and settled.