**Mildred M. REARDEN, et al., Appellants,**

v.

**The RIGGS NATIONAL BANK
of Washington, D.C., et
al., Appellees.**

**No. 94–CV–470.**

District of Columbia Court of Appeals.

Argued Jan. 11, 1996.

Decided May 31, 1996.

FOR D.C. SUPERIOR COURT JUDGES, 52 (Orloff 1993).

Michael B. McGovern, Washington, with whom Carol A. Alexander, was on the brief, for appellants.

Philip J. Deutch, Washington, with whom Paul Martin Wolff and Gerson A. Zweifach were on the brief, for appellee The Riggs National Bank of Washington, D.C.

James M. Lichtman, Washington, with whom David Overlock Stewart was on the brief, for appellee Sanford Goldstein.

Before FERREN and STEADMAN, Associate Judges, and BELSON, Senior Judge.

STEADMAN, Associate Judge:

Riggs National Bank of Washington, D.C., and Sanford Goldstein, appellees herein, were cotrustees of an inter vivos trust, with a

"pourover" provision into the probate estate [1] of the settlor upon her death (which occurred four years after the creation of the trust). Appellees are also two of the three personal representatives of the settlor's probate estate.

The issue before us is whether the residuary legatees of the probate estate can bring an action for an accounting directly against the appellees in their capacity as trustees. We hold that any such accounting must be sought in the first instance through the probate proceedings.

## I.

## A.

On June 3, 1987, Hazel M. King, then eighty-seven years old, established a revocable inter vivos trust for most of her assets. Appellees were named as trustees. In essence, the trust provided that Mrs. King and her husband should receive such amounts from the trust's income and principal as needed to maintain their accustomed standard of living. The trust terminated upon the death of Mrs. King, and "[u]pon termination of this trust, the remaining principal and the accumulated and undistributed income, if any, shall be paid over to the Personal Representatives of the Grantor's estate and said trust assets shall be distributed in accordance with the Grantor's will, dated August 27, 1982."

With respect to accountings by the trustees, the agreement provided that such accountings would be delivered at least annually to Mrs. King and/or any designated agent. Furthermore, "upon the termination of the trust, the Trustees shall prepare a final account and shall deliver the same to the Grantor's agents and to the Personal Representatives of the Grantor's estate."

With respect to compensation to the trustees, the agreement provided simply that "[t]he Trustees shall be entitled to receive the compensation that is customary for trustees in the District of Columbia; provided, however, that the compensation of any institutional Trustee shall be in accordance with such institution's standard trust fee schedule as in effect from time to time."

## B.

Mrs. King died on July 17, 1991, without having amended her will of August 27, 1982. The personal representatives of her probate estate are the two appellees and Lillian Malins.[2] Pursuant to the trust agreement, the assets of the trust (approximately $1.6 million) were delivered to the personal representatives and constitute the great bulk of the probate estate. The appellants, Mrs. King's sister, niece, and nephew, are the residuary legatees under Mrs. King's 1982 will.

Appellees refused to make available to the appellants the final accounting required by the trust agreement. Consequently, on September 28, 1993 appellants filed a complaint in the civil division against the appellees in which they sought 1) to compel the appellees to furnish a final account to the appellants and 2) to challenge the amount of compensation, including a termination fee, that the trustees had paid themselves from the trust assets.

Both appellees filed motions for summary judgment, which the trial court granted by order of April 12, 1994. The trial court held that appellants had failed to show that they had "any legal or equitable right to bring suit to challenge the administration of the trust." It reasoned that only the beneficiaries of a trust have the right to supervise the administration of the trust in order to see that their interests are properly protected, and that under the terms of this trust, "the only beneficiaries of the trust included Hazel King and her husband and did not include the plaintiffs." The trial court rejected appellants' argument that as legatees under the will,

---

1. "Pourover" provisions more commonly appear in wills and "pour over" estate assets into an inter vivos or testamentary trust. *See* D.C.Code § 18–306 (1989 Repl.). This case is unusual in that the settlor's assets "pour over" from an inter vivos trust into an estate.

2. An affidavit filed by appellant Mildred Rearden states that for a number of years, Ms. Malins was the secretary to the late father of appellee Goldstein, a New York lawyer, and also worked on various occasions with Goldstein himself, a New York accountant.

they should also be deemed beneficiaries under the trust, pointing out that the terms of the trust agreement require that the final accounting be given to the personal representatives.[3] From this ruling, appellants filed a timely appeal to this court.

### C.

Appellants also sought relief through the probate proceedings. They initially requested an accounting from Riggs on July 26, 1993. Riggs denied the request in its capacity as a personal representative. When the personal representatives attempted to close the probate estate and claim compensation for their services, appellants filed objections with the Register of Wills, based on the amount of the compensation sought and alleged breaches of fiduciary duty by the personal representatives.

These objections are still pending before the Probate Division. The probate estate remains open. On October 18, 1993, the auditor of the final probate account stated that it would not be submitted for further action "until the resolution of the pending civil action." Subsequently, on September 5, 1995, the probate court ordered appellees, in their capacity as personal representatives, to furnish appellants with a copy of the final account of the trust. On December 29, 1995, the probate court issued an order expressly holding in abeyance further consideration of the final probate account and the compensation request pending the conclusion of the instant appeal.

### II.

### A.

◼◼◼ We begin with a restatement of some fundamental principles. A trustee has the highest duty of loyalty to the beneficiaries of the trust that it administers. *See*

*Cabaniss v. Cabaniss,* 464 A.2d 87, 91 (D.C. 1983) (trustee owes equitable duties to beneficiary); RESTATEMENT (SECOND) OF TRUSTS ("RESTATEMENT") § 170. These beneficiaries are entitled to hold a trustee responsible for all its actions. *See* RESTATEMENT § 199. Accordingly, a trustee is under a duty to the beneficiary to keep clear and accurate accounts with respect to the administration of the trust. RESTATEMENT § 172. More specifically, the trustee "is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust." RESTATEMENT § 173; *see Shaull v. United States,* 82 U.S.App.D.C. 174, 178, 161 F.2d 891, 895 (1947); *Richardson v. Van Auken,* 5 App.D.C. 209, 215 (1895).

Furthermore, this duty extends not only to present beneficiaries but to all persons having a present or future interest in the trust or its assets. *See id.;* RESTATEMENT § 172 cmt. c. Thus, for example, if a trust is established with a life beneficiary and a provision that upon the death of the life beneficiary, the trust is to terminate and the assets thereof will be paid over to X, X has the right to demand from the trustee an accounting of his administration of the trust. III WILLIAM F. FRATCHER, SCOTT ON TRUSTS ("SCOTT") §§ 200 & n. 2, 214 & n. 1 (4th ed.1989) (citing cases); *see, e.g., In re Clarke's Will,* 198 Md. 266, 81 A.2d 640, 642–43 (1951).[4] This right exists because X, as remainderman, does indeed have an interest in the assets of the trust and in its administration, at least insofar as the administration affects the quantum of property remaining in the trust at its termination. *See Himmelfarb v. Horwitz,* 536 A.2d 86, 92 (D.C.1987) (only a

---

3. In supporting papers to its motion for summary judgment, Riggs stated that a final account had been prepared and provided to the personal representatives of the probate estate of Mrs. King, which it asserted was all that the trust instrument required.

4. That even potential remaindermen have an interest in a trust that must be respected is reflected in *Hatch v. Riggs Nat'l Bank,* 124

U.S.App.D.C. 105, 111, 361 F.2d 559, 565 (1966) and *Liberty Nat'l Bank v. Hicks,* 84 U.S.App.D.C. 198, 201, 173 F.2d 631, 634 (1948), which barred the termination of an irrevocable inter vivos trust over which the trustor held a testamentary power of appointment absent the consent of the trustor's heirs, who would take in the absence or failure of such appointment.

beneficiary with an interest in the aspect challenged has standing); *Scott v. Powell*, 86 U.S.App.D.C. 277, 284, 182 F.2d 75, 82. (1950) ("[T]here is no such thing as property held in trust without anybody being entitled to the principal if the trust expires.").

How, then, are these general principles to be applied to this case? Specifically, who is the "remainderman" here with the right to challenge the administration of the trust? At one extreme is the claim that appellants' status as legatees under the will is sufficient to endow them with the right to bring an immediate action against the trustees as if they were direct remainder beneficiaries under the pourover trust. At the other extreme is the position that under the terms of the trust agreement itself appellees as trustees have responsibility to make an accounting only to the "Personal Representatives," which they have done, and that appellees have no independent right to an accounting from the trustees or to challenge the administration of the trust under any circumstances.[5]

We think both these positions are too simplistic, given the nature of the trust and the precise legal relationships of the several parties to this dispute, most particularly the role of appellees as personal representatives of the settlor's probate estate. Conceptually, the roles of appellees as trustees and as personal representatives are entirely distinct, and it is helpful to analyze their status as if entirely distinct entities were involved. We first look at the nature of the relationship between the trust and the personal representatives of the settlor and then at the nature of the relationship between the personal representatives and appellees as legatees of the probate estate.

### B.

Inherent in the Anglo–American system of property law is the concept that ownership rights consist not only of a present right to possession and use of property but also of future use; that is, ownership may be divided in terms of time. From this concept flows the familiar arrangement in which one person may own a life estate, with a future interest in a remainderman upon the life tenant's death. *See Scott, supra*, 86 U.S.App.D.C. at 284, 182 F.2d at 82.

In the case before us, the settlor designated her personal representatives as the takers of the trust property upon her death. The personal representatives, of course, took that remainder interest subject to distribution in accordance with the settlor's will, just as they received any other form of property that the decedent might have owned at the time of her death.[6] The fact that the testator here specifically designated the will[7] that would govern the disposition does not differentiate the situation from any other pourover trust. The testator specified that the property was to pass from the trustees to her personal representatives, thereby indicating that she expected the trust assets would be treated as part of her probate estate.[8] Thus, in accordance with normal probate process, as appellants acknowledge in their brief before us,[9]

---

**5.** This argument appears to have been the basis for the trial court's ruling in the appeal before us.

**6.** *See* D.C.Code § 20–105 (1989 Repl.) (legal title to all property of a decedent passes to the personal representative upon decedent's death). Under D.C.Code § 20–711(a) (1989 Repl.), the personal representative shall file with the court a verified inventory of the property owned by the decedent at the time of death. The inventory shall include "any other interest in property, tangible or intangible, that passes by the terms of a valid will or the law of intestate succession." D.C.Code § 20–711(a)(7) (1989 Repl.).

**7.** Because the will was never amended, we need not address here the possible effect of any such amendment on the ultimate distributive scheme.

*Cf. Estate of Gillespie*, 145 Misc.2d 542, 547 N.Y.S.2d 531, 534 (N.Y.Surr.Ct.1989) (pourover from inter vivos trust to probate estate governed by terms of will extant at death, not by terms of will referenced in the trust).

**8.** The situation might have been different, for example, had she instructed the *trustees* to distribute the trust assets in accordance with the terms of her will.

**9.** "Appellees [sic] ... were to receive the remainder, less specific bequests, taxes and administrative expenses, as residuary beneficiaries of the Trust and her estate. This was so because the Trust was a pour-over trust to Hazel King's estate, and the Rearden beneficiaries were the sole residuary legatees under her will dated August 27, 1982."

the trust assets, which pass to and become probate assets, could be used for the expenses of probate administration, the payment of taxes, the satisfaction of unpaid debts of the decedent, and specific bequests before the remaining assets, if any, would reach the residuary takers under the will.[10] *See* D.C.Code §§ 20–751 & 20–901 to –914 (concerning payment of debts and claims of estate) (1989 Repl. & Supp.1995).

■ Otherwise put, we think that the trust provision terminating the trust upon the death of the settlor and providing that the trust assets should be "paid over to the Personal Representatives of the Grantor's estate and ... distributed in accordance with the Grantor's will" contemplated the establishment of a new fiduciary relationship between the personal representatives and the legatees under the will, independent of the relationship between the trust and the personal representatives of the settlor.

■ Given this state of affairs, we cannot conclude that a party whose potential property interests flow from a will can proceed directly against a trustee of a pourover inter vivos trust on precisely the same basis as if the party were a beneficiary of the trust. The interposition of the personal representative and the variegated probate interests that could derivatively make claims suggests that such parties should be required to seek initial

relief through the probate proceedings rather than directly.[11]

■ This result is analogous to that which prevails when the beneficiary of a trust seeks relief against an alleged wrong to the trust committed by a third party. The general rule is that a beneficiary cannot bring an action directly against a third-party wrongdoer.[12] RESTATEMENT § 281; SCOTT § 281. Rather, his relief is an action in equity against the trustee to compel the trustee to proceed against the third-party, although for purposes of judicial economy the third party may also be joined as a defendant in the beneficiary's action. RESTATEMENT § 282(2) & cmt. e; SCOTT § 282.1. Analogously, then, in this case the legatees cannot proceed directly against the alleged third-party wrongdoers, the trustees of the inter vivos trust. Instead the legatees must proceed in the first instance against the entities with whom the legatees have a fiduciary relationship: the personal representatives of the probate estate. *See* D.C.Code §§ 20–101(d)(1)(C), –743 (legatees in being are "interested persons" to whom personal representatives are liable for breach of fiduciary duty). In the District of Columbia the probate court is the designated body for resolving disputes concerning the administration of the estate by the personal representatives. D.C.Code § 20–107 (1989 Repl.). Therefore, the legatees must proceed in the first instance

10. Appellants have not made the will of Mrs. King part of the record on appeal. *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982) (putting burden on appellant to present appellate court with complete record that affirmatively shows error). Therefore, we assume that it contains such provisions as are normally found in wills. Riggs states that the three appellants received specific bequests totaling $400,000, in addition to their residuary interests.

11. In this regard, it seems inexplicable that appellees in their capacity as personal representatives refused to make the final account available to the appellants in their capacity as legatees under the will, asserting to the probate court that they were entitled to keep the account "totally a secret from the legatees." *Cf.* D.C.Code § 20–733 (1989 Repl.) ("Nothing shall excuse a personal representative from the duty to mail or deliver ... accounts to each interested person [including legatees]...."). Legatees are entitled

to full access to all aspects of probate administration, *see* D.C.Code §§ 20–711 to –733, and it is plain that the final accounting was made to the personal representatives in their fiduciary capacity. Further, as the probate court noted, accounts in a decedent's estate must contain information as to the value of assets, receipts, transfers, and the like, D.C.Code §§ 20–722 & –723, which would "certainly include precise information as to the amount and source of money that flows into the estate—from whatever the source may be." The probate court, quite rightly, eventually ordered the personal representatives to make available the final account itself to the legatees, as already noted.

12. The one exception to this rule permits the beneficiary to sue the third-party wrongdoer directly if the beneficiary is in possession of the subject matter of the trust. RESTATEMENT § 281(2).

through the probate court.[13] We turn to that aspect.

## C.

Under District of Columbia law, the personal representative of a decedent is vested with legal title to all property, both real and personal, owned by the decedent at the time of her death. D.C.Code § 20–105 (1989 Repl.). The personal representative is a fiduciary with responsibilities to all parties concerned with the administration and distribution of a probate estate. D.C.Code § 20–701(a) (1989 Repl.); *Godette v. Estate of Cox,* 592 A.2d 1028, 1034 (D.C.1991). The personal representative has a duty to take possession and control of the decedent's estate and to maintain any action reasonably necessary—including, presumably, an action against a trustee of a pourover trust—to recover possession of estate property. D.C.Code § 20–702 (1989 Repl. & Supp. 1995).[14] Further, the personal representative has the same standing to sue as the decedent had at death. D.C.Code § 20–701(c) (Supp.1995).[15]

In the case before us, the settlor expressly provided for a final accounting to be rendered to the personal representatives she had named. She thereby charged her personal representatives with a duty related to the pourover trust as part of their duties related to the estate. This provision reflects the decedent's intent that the personal representatives bring the powers and duties of their position to bear on the trust accounting, not by simply receiving the accounting but by taking any appropriate action with respect thereto.

 In this respect, a personal representative that takes property from a pourover trust, pursuant to a trust document that provides for a final accounting to the personal representative, occupies a position analogous to a successor trustee. A successor trustee has a duty to proceed against the predecessor for any breach of trust committed by the predecessor of which the successor has knowledge;[16] analogously, the personal representative would be obligated to pursue any such claim known to it on behalf of the probate estate.[17] "If any personal representative's exercise of power concerning the estate is improper, such representative is liable for breach of fiduciary duty to interested persons for resulting damage or loss to the same extent as a trustee of an express trust." D.C.Code § 20–743 (1989 Repl.).

**13.** We are not persuaded otherwise by appellants' citations to *In re Will of Zilkha,* 174 A.D.2d 331, 570 N.Y.S.2d 807 (1991) and *Hodel v. Irving,* 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987). *See also Schaefer v. Schaefer,* 89 Wis.2d 323, 278 N.W.2d 276, 278 (App.1979) (legatees may sue third parties to enforce interests of estate when personal representatives fail to act) (citing 31 AM.JUR.2D *Executors and Administrators* § 791 (1967)). Differing court systems and procedures, as well as the precise issue in question, may affect the outcome. For example, *Zilkha* involved New York law and procedure, and it appears that all proceedings took place in the Surrogate Court, which is responsible for both wills and testamentary trusts. *See* 570 N.Y.S.2d at 808–09. *Hodel* presented a situation involving a constitutional attack on a federal Indian lands statute; we do not understand it necessarily to implicate a broad holding of general applicability.

**14.** Although the 1995 amendment to § 20–702 does not apply to this estate, which was opened before the amendment took effect, the amendment reflects a preexisting rule. *See, e.g., Bullard v. Curry–Cloonan,* 367 A.2d 127, 132 (D.C. 1976) (executor of estate has duty to institute legal or equitable action when necessary to bring all of decedent's assets into the estate); *Estate of Baldwin,* 442 A.2d 529, 532 (Me.1982) (executor has duty to preserve estate assets from depletion); *Cearfoss v. Wolfinger,* 195 Md. 49, 72 A.2d 763, 765–66 (1950) (personal representative of estate has duty to collect payment from debtors and remit payment to the estate).

**15.** D.C.Code § 20–701(c) took effect in 1995 but, like D.C.Code § 20–702, merely codified an existing rule. *See, e.g., Hailey v. Otis Elevator Co.,* 636 A.2d 426, 427 (D.C.1994); *Hines v. District of Columbia,* 580 A.2d 133, 135 (D.C.1990).

**16.** RESTATEMENT § 223; *see, e.g., Boone v. Wachovia Bank & Trust Co.,* 82 U.S.App.D.C. 317, 319, 163 F.2d 809, 811 (1947) (successor trustee sued predecessor trustee, who had wrongfully removed trust assets from jurisdiction, to recover assets and for an accounting).

**17.** The probate court noted this fact in its order of September 9, 1995, stating that "[a]ll three Co–Personal Representatives could be implicated in any allegation of a failure to question the Final Accounting of the Trust and to pursue the interests of the estate itself."

### III.

Thus, the personal representatives in this case have not only the power but the duty to act on behalf of the legatees of the estate insofar as any breaches of the inter vivos trust may be concerned. Here, the personal representatives have apparently taken the position that no breach of trust has occurred. The question then becomes: what remedies, and pursuant to what procedures, within the probate process do the legatees have against personal representatives who allegedly have failed to fulfill duties incumbent upon them in that role?

 This is a matter for the probate court to address in the first instance. As legatees, appellants clearly have standing to raise objections to, and seek redress for, actions or inactions by the personal representatives that diminish the size of the property interests passing to the legatees through the probate estate. *See* D.C.Code § 20–743 (1989 Repl.) (personal representative liable to "interested persons," including legatees, for damage resulting from breach of fiduciary duty). Under normal circumstances the personal representatives, not the legatees, would assert the interests of the estate against the pourover trustees. *See Tribull v. Tribull,* 208 Md. 490, 119 A.2d 399, 405 (1956); 6 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON WILLS § 59.2 (3d ed.1962). The distinctive feature here, of course, is that while conceptually the trustees and the personal representatives occupy distinct juridical roles, in this case largely the same entities occupy both positions.[18] Where there is such a facial conflict of interest, the probate court may see fit to remove the personal representatives and appoint a replacement, perhaps the objecting legatees themselves. *See* D.C.Code § 20–526 (1989 Repl.) (removal of personal representative for inability to discharge duties or failure to perform material

duty of office). Or a probate proceeding might be undertaken in which the legatees would proceed against the personal representatives to compel them to fulfill their duty to the estate and to the legatees, analogous to the proceeding in equity contemplated by the Restatement of Trusts. See discussion *supra* Part II. B. As yet another option, the probate court might decide to authorize the legatees to proceed directly against the appellees in their capacity as trustees.[19] *See, e.g., McDonald v. McDonald,* 68 Wis.2d 292, 228 N.W.2d 727 (1975).

No doubt other permissible courses of action exist. We need not explore further precisely how the probate court might choose to act in such a situation; its powers are plainly ample to prevent any wrongdoing to appellants. As we understand it, appellants have registered objections to the approval of the final trust account by the personal representatives on the grounds that they presented in the civil litigation. Were the civil division to consider appellants' suit standing alone, its perspective would be limited to the issues raised by the trust accounting. The probate court is in the best position to assess the complex interrelationship among the parties with interests in the estate and those with interests in the trust, because all of the relevant parties and issues are already before it. The probate proceedings have been stayed pending the outcome of this appeal, and may now resume.

 In sum, we conclude that the legatees here must seek relief in the first instance through the intercession of the probate court. Rooted solely in that proposition,[20] the entry of judgment below in favor of the appellees can be and on that basis is hereby

---

**18.** We are not unmindful of the fact that one of the personal representatives is an entity without a formal dual role, which may affect the precise form of action decided upon by the probate court.

**19.** A decision by the probate court to permit the legatees to sue on the estate's behalf, after the personal representatives refuse to do so or are prevented from doing so by a conflict of interest,

would not contradict our holding in this appeal that the legatees cannot sue directly without first proceeding through probate.

**20.** Therefore, no other aspect of the judgment or of the trial court's opinion relating thereto shall be deemed to operate as *res judicata* or law of the case in subsequent proceedings in the probate court.

*Affirmed.*[21]

---

**21.** We review trial court judgments, not opin-
ions. *Thoubboron v. Ford Motor Co.,* 624 A.2d
1210, 1212 n. 1 (D.C.1993). It is at least argua-
ble that under our analysis the precise disposi-
tion should have been a dismissal instead of an
entry of judgment. Furthermore, we are not
unmindful of the fact that our trial court system
is a unitary one, with each division having plena-
ry jurisdiction. *Andrade v. Jackson,* 401 A.2d
990, 992–93 (D.C.1979). An appropriate disposi-
tion in this case may have been for the trial court
to transfer the action to the probate court. *Cf.
Andrade, supra,* 401 A.2d at 994. A determina-
tion of the appropriate unit of the trial court to
deal with a given action is generally left to that
tribunal. *Farmer v. Farmer,* 526 A.2d 1365, 1369
(D.C.1987). We see no need to explore any of
those refinements because here, as a practical
matter, all the relevant parties are already in-
volved in the existing proceedings in the probate
court.

