**In re ESTATE OF Hazel M. KING,
Mildred M. Rearden, et al.,
Appellants.**

**Nos. 97–PR–1885, 98–PR–1070.**

District of Columbia Court of Appeals.

Argued Dec. 8, 1999.
Decided March 22, 2001.

Michael B. McGovern, Washington, DC, for appellants.

Kenneth C. Smurzynski, with whom Paul Martin Wolff and Gerson A. Zweifach, Washington, DC, were on the brief, for appellee Riggs National Bank of Washington, DC.

David O. Stewart, Washington, DC, and Marc E. Sorini were on the brief, for appellee Sanford Goldstein.

Before STEADMAN, RUIZ and REID, Associate Judges.

RUIZ, Associate Judge:

This appeal presents an issue of first impression concerning the responsibilities of fiduciaries who have dual roles, as trustees and personal representatives, relating to the same assets.[1] We affirm the trial court's award of unpaid trustee fees to appellees, Riggs National Bank and Sanford Goldstein, and its decision awarding compensation to Riggs in its capacity as co-personal representative. We remand the case for further fact finding regarding compensation for appellee Goldstein as personal representative, on the question of the legatees' request that their legal fees be imposed as a sanction for bad faith litigation or as a surcharge against appellees on whether compensation to the law firms which represented the trustees/co-

---

1. This is the second time we review a probate court decision regarding the contentious administration of the estate of Hazel M. King. In *Rearden v. The Riggs Nat'l Bank of Washington,* 677 A.2d 1032 (D.C.1996), we held that the residuary legatees of Hazel King's estate could not bring an action for an accounting directly against the trustees of an *inter vivos* trust that poured over into the estate upon Ms. King's death, but rather such an accounting must be sought in the first instance through the probate proceedings. *Id.* at 1039. The matter at bar is an appeal from the probate proceedings in which such an accounting was furnished to the legatees, who claim that some of the fees approved by the trial court were excessive or not properly payable from the estate.

personal representatives should be paid from estate funds, the trial court should then make any appropriate adjustments or redeterminations of the awards of compensation and attorney's fees.

## I.

Hazel M. King died testate on July 17, 1991, at the age of 91. The Estate of Hazel M. King ("the Estate") was the distributee of the remaining principal and the accumulated and undistributed income of an *inter vivos* revocable trust that had been created by Ms. King, the Hazel M. King Trust ("the Trust"), which by its terms terminated at her death. The Estate consisted of approximately $1.5 million in assets comprised of cash, stocks and bonds. Appellees, Riggs National Bank of Washington D.C. ("Riggs") and Sanford Goldstein, were trustees of the now-terminated Trust.[2] Riggs and Goldstein were also named co-personal representatives of the Estate, along with Lillian Malins.

The trust instrument provided that "upon termination of this trust, the remaining principal and the accumulated and undistributed income, if any, shall be paid over to the Personal Representatives of the Grantor's estate and said trust assets shall be distributed in accordance with the Grantor's will, dated August 27, 1982." With respect to accountings by the trustees, "upon the termination of the trust, the Trustees shall prepare a final account and shall deliver the same to the Grantor's agents and to the Personal Representatives of the Grantor's estate." The trust instrument provided that "[t]he Trustees shall be entitled to receive the compensation that is customary for trustees in the District of Columbia; provided, however, that the compensation of any institutional Trustee shall be in accordance with such institution's standard trust fee schedule as in effect from time to time."

On August 7, 1991, three weeks after Ms. King's death, her will was admitted to probate. In accordance with Ms. King's instructions, Riggs, Goldstein and Malins were appointed co-personal representatives of the Estate on September 16, 1991. In 1993, the legatees requested a copy of the final account of the Trust from Riggs and Goldstein in order to evaluate the reasonableness of their requests for compensation, the legatees having filed objections with the Register of Wills. Appellees denied their request, prompting the *Rearden* litigation. While the *Rearden* case against Riggs and Goldstein as trustees was pending, further consideration of the probate account and the personal representatives' compensation request was held in abeyance, but on September 5, 1995, the trial court ordered Riggs, Goldstein and Malins, the personal representatives, to provide the Final Account of the Trust to the legatees. On September 21, 1995, Riggs provided the legatees with an undated and unsigned "Statement of Account." In an order dated December 18, 1996, the probate court ordered appellees to file a Final Account by January 31, 1997, and by affidavit to "certify under oath the pertinent information about the preparation and submission of the [Statement of Account]," identified as the final account of the trust, including the date its preparation was complete and the date a copy was mailed to Malins, the third co-personal representative of the Estate. Appellees filed separate "declarations" confirming that the Statement of Account was the Final Account for the Trust and had been mailed to Malins on November

---

2. All the specific legacies have been paid. The sole remaining question is distribution of the residue of the Estate.

29, 1993. On January 31, 1997, the Fourth and Final Account of the Trust was filed by appellees along with their separate counsels' Second Request for Compensation of Litigation Expenses on behalf of the personal representatives, to which the legatees filed their objections.

The probate court: 1) approved unpaid Trustee commissions payable to Riggs but denied further Trustee commissions requested by Goldstein; 2) approved in full the compensation sought by the law firms representing Riggs and Goldstein; and 3) approved half of the compensation sought by Riggs as personal representative, 4) but denied entirely the compensation sought by co-personal representatives Goldstein and Malins. The probate court found that the co-personal representatives were responsible for the non-disclosure of the final account of the Trust to the legatees, and accordingly sanctioned Riggs by reducing its requested personal representative compensation by half. Because Goldstein had been overpaid from the Trust in his role of trustee, the trial court refused to approve further trustee compensation. Goldstein was not required to reimburse the Trust for the overpayment; instead the probate court refused to approve his request for compensation as personal representative as a sanction for the non-disclosure of the final account of the Trust to the legatees, and offset the overpayment from the Trust against Goldstein's requested compensation as personal representative. The legatees appealed this order. Subsequently, by order dated June 12, 1998, the probate court approved the restated fourth and final account, which incorporated the court's previous order regarding trustee commissions, personal representative com-

pensation and related attorneys' fees. The legatees appealed this order as well, and the two appeals were consolidated by order of this court.

## II.

### A. Unpaid Trustee Fees professors

■ "As is evident, a court's initial focus must be on the terms of the trust." *In re Estate of Cavin,* 728 A.2d 92, 98 (D.C. 1999). Pursuant to the trust instrument, Riggs, as an institutional trustee, was to be paid according to its applicable fee schedule whereas Goldstein was entitled to "compensation that is customary for trustees in the District of Columbia." The legatees assert that the probate court made no findings regarding Estate funds totaling $33,398, which, according to the legatees, were taken unilaterally by Riggs and Goldstein once they became personal representatives.[3] The trial court recognized, however, that "remaining additional [trustee] commissions must be payable, if at all, from assets of the estate because all Trust assets have been relinquished to the estate." The trial court was presented expert testimony, in the form of affidavits, from both the trustees and the legatees regarding general practices in the payment of trustee commissions in the District of Columbia.

### 1. Riggs' Trustee Compensation

■ The legatees' expert, August Zinsser, III, stated that institutional trustees are paid commissions based on their standard schedules of fees, but that institutional trustees in the District of Columbia typically do not charge a percentage termi-

---

**3.** That figure, according to the legatees, consists of a one percent (1%) trust termination fee of $14,820.69 taken by both Riggs and Goldstein (a total of $29,641.38), as well as a $1,251.95 termination fee for principal reduc-

tions taken by Riggs and $2,502.93 in other commissions taken by Goldstein. Thus, the contested trustee compensation on appeal is actually $33,396.26.

nation fee where they served as trustee for a trust which pours over into an estate for which they also serve as personal representative, even when a published fee schedule literally permits a termination fee. Even if Zinsser accurately described standard practice in the District of Columbia, as appellees' expert, George Levendis, and the probate court correctly noted, "the payment of termination commissions was contractual, in the sense that the Trust instrument provided that institutional commissions would be based upon the fee schedule of Riggs ... which in turn does provide for termination fees...." *Cf.* RESTATEMENT (SECOND) OF TRUSTS § 242 cmt. f ("If by the terms of the trust it is provided that the trustee shall receive a certain amount as compensation for his services as trustee, he is ordinarily entitled to that amount....").

The legatees argue that because the Final Account of the trust was not prepared until at the earliest 1993, the probate court should have based its award on Riggs' standard fee schedule in effect at that time, which called for Riggs to receive a single one percent (1%) commission where Riggs served both as trustee of a trust and also was named personal representative of the estate which receives the trust corpus. The trust by its own terms terminated on the death of Ms. King in 1991, however, and the trust instrument unequivocally states that "[t]his trust shall terminate upon the death of the Grantor." Although the customary practice may be to waive such fees, Riggs was within its contractual rights, pursuant to the trust instrument and the fee schedule in place at the termination of the trust, to receive the termi-

nation fees. *See id.* Accordingly, the trial court did not abuse its discretion by awarding the requested trustee compensation to Riggs based on its 1991 fee schedule.

### 2. Goldstein's Trustee Compensation

■ The trust instrument provided that non-institutional trustees would be compensated as is "customary for trustees in the District of Columbia." In determining the propriety of Goldstein's trustee compensation, the court credited Zinsser's statement that non-institutional trustees customarily bill their time at an hourly rate if they usually bill at an hourly rate in their business; otherwise, non-institutional co-trustees are typically paid fifty percent (50%) of what the institutional co-trustee is paid. Rather than presenting an hourly statement of services, Goldstein, a certified public accountant, charged the Trust the same commissions charged by Riggs at its institutional rate. The probate court found that Goldstein's request for commissions was "entirely arbitrary" and approved Goldstein's trustee commissions at fifty percent (50%) of the commissions charged by Riggs.[4] The court then considered Goldstein's trustee compensation as a whole, finding that compensation Goldstein had previously received from the trust, billing the trust for his services at Riggs' institutional rate, was more than the amount to which he was entitled when his trustee compensation was properly computed at fifty percent (50%) of Riggs' compensation. Because Goldstein had overcharged the trust by almost fifteen thousand dollars,[5] the probate court denied

---

4. The probate court rejected Goldstein's belated attempt to estimate the hourly time expended as Trustee.

5. Goldstein had received $47,942.38 from the Trust prior to the death of Hazel King. As

Riggs was entitled to receive a total of $66,214.12 from the Trust, Goldstein's trustee compensation, at fifty percent of Riggs' fees, would be $33,107.06, which the trial court described as "giving Goldstein the very broad

Goldstein any further trustee compensation. Rather than have Goldstein reimburse the estate for the prior overpayment in trust fees, however, the probate court offset the amount Goldstein had been overpaid as a trustee against the amount he was requesting in personal representative compensation. Although we perceive no abuse of discretion in the probate court's denial of further trustee compensation to Goldstein, the record is unclear as to the trial court's decision to offset the overpayment as trustee against Goldstein's requested compensation as personal representative of the Estate. See *infra* part C.[6]

### B. Personal Representative Fees

▮▮▮ Under the version of D.C.Code § 20–751(c) current at the time this estate went into probate, "[a] request for compensation for work performed with respect to the administration of an estate [by each personal representative or any attorney employed by them] must be accompanied by documentation showing a reasonable relationship between the requested fees and the nature of the services performed, the reasonableness of the time spent, the number of hours expended, the applicant's usual hourly compensation, and the results achieved." *Williams v. Ray*, 563 A.2d 1077, 1080 (citing D.C.Code § 20–751(c) (1981)).[7] "A trial court must consider these statutory factors when determining the amount of compensation, if any, to be awarded." *Id.* (citing *Poe v. Noble*, 525

A.2d 190, 196 (D.C.1987)). "A trial court's decision to deny compensation, if based upon application of the statutory factors specified in D.C.Code § 20–751(c), is an exercise of discretion that we will not disturb absent abuse." *Godette v. Estate of Cox*, 592 A.2d 1028, 1032 (D.C.1991). "But the failure to make appropriate findings of fact is itself an abuse of discretion." *Williams*, 563 A.2d at 1080.

In *Rearden* we recognized Ms. King's "intent that the personal representatives bring the powers and duties of their position to bear on the trust accounting, not by simply receiving the accounting but by taking any appropriate action with respect thereto." 677 A.2d at 1038. We analyzed this duty as being analogous to that of a successor trustee, which "has a duty to proceed against the predecessor for any breach of trust committed by the predecessor of which the successor has knowledge; analogously, the personal representative would be obligated to pursue any such claim known to it on behalf of the probate estate" *Id.* (footnote omitted); *see also* D.C.Code § 20–743 (1989 Repl.) ("If any personal representative's exercise of power concerning the estate is improper, such representative is liable for breach of fiduciary duty to interested persons for resulting damage or loss to the same extent as a trustee of an express trust."). Thus we stated that "the personal representatives in this case have not only the power but the duty to act on behalf of the

---

benefit of the doubt." Thus, Goldstein was overpaid $14,835.42 from the Trust.

**6.** The trial court also noted that District of Columbia law does not authorize the Superior Court to monetarily recognize the work of individual heirs, legatees, or third parties whose efforts have allegedly benefitted the estate, stating that "the District of Columbia Code does not provide for the reward of bounty hunters, Good Samaritans, or volunteers...."

**7.** D.C.Code § 20–751 was amended in 1995 by the Probate Reform Act of 1994, D.C. Law No. 10–241 (1995). The amendments were expressly made applicable to estates of decedents who died on or after July 1, 1995. *See* Probate Reform Act of 1994 Emergency Amendment Act of 1995, D.C. Act 11–79, 42 DCR 3452 (1995). As noted, Ms. King died in 1991.

legatees of the estate insofar as any breaches of the inter vivos trust may be concerned," and left it to the trial court in the first instance to decide "what remedies, and pursuant to what procedures, within the probate process the legatees have against personal representatives who allegedly have failed to fulfill duties incumbent on them in that role." 677 A.2d at 1039. We noted, however, that "it seems inexplicable that appellees in their capacity as personal representatives refused to make the final account available to the appellants in their capacity as legatees under the will," because "[l]egatees are entitled to full access to all aspects of probate administration." *Id.* at 1037 n. 11 (citing D.C.Code §§ 20–711 to 733).

■ Following *Rearden,* the probate court recognized that "the legatees objectively did have a right to obtain the Final Report of the Trust, once the decedent's estate was opened and once the former Trustees had switched to their new role.... Whether or not they feared a lawsuit, the Trustees should have prepared this Final Account and revealed it *after they became Co-personal representatives.*" (Emphasis in original). Because appellees failed to do so, the probate court chose to reduce the co-personal representatives' requested compensation, stating that "[t]he [District of Columbia] Code contemplates that when legitimate criticism can be laid at the feet of the fiduciary, the method of imposing a monetary sanction is simply to approve less than the full compensation that is requested." Although we need not decide whether this is the only means available to the probate court under § 20–

751(c), we do not question that it is legitimate to sanction a personal representative for actions which provide no benefit, and indeed are detrimental, to the estate. *See Williams,* 563 A.2d at 1080 (benefit to estate is factor to be considered in compensation award); *see also In re Estate of Torian,* 263 Ark. 304, 564 S.W.2d 521, 526 (1978) ("[T]he court, in its discretion, may deny totally or reduce the compensation to a personal representative who has failed to file a satisfactory account or perform any other substantial duty pertaining to its office."); *Cf.* RESTATEMENT (SECOND) OF TRUSTS § 243 ("If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation.").[8]

### 1. *Riggs*

■ Noting the "natural conflict of interest" that arises when the same entity occupies the roles of both trustee and personal representative, and citing Riggs' failure, *as personal representative,* to provide a final account of the Trust to the legatees until compelled to do so by court order,[9] the court awarded Riggs one-half of its requested personal representative compensation based on the "totality of the circumstances." The legatees simply argue that, under the circumstances, the reduction should have been greater. We perceive no abuse of discretion in the probate court's decision.

### 2. *Goldstein*

■ The probate court found that Goldstein "should bear the same burden that

---

8. In addition to liability that the trial court may impose, "a personal representative is personally liable for any breach of his or her fiduciary duty to interested persons." *Godette,* 592 A.2d at 1035 (explicating D.C.Code § 20–743).

9. Secondarily, the probate court also referenced the appellees filing of a declaration under penalty of perjury instead of an affidavit in response to a court order to provide affidavit information concerning the final account.

the Court places upon Riggs where the disclosure issue is concerned." The probate court additionally recognized that because Goldstein "overpaid himself during the lifetime of the decedent, he can only replace the overpayment by refunding money to the decedent's estate out of his pocket or by accepting a reduction in compensation that he otherwise earned as Co Personal Representative." Opting for the latter method, the trial court found that the overpayment received by Goldstein as trustee "should be deducted from his claimed compensation ($20,000) as a Co Personal Representative, in conjunction with a further reduction for all of the same reasons that this court will reduce the fees of Riggs," and that "he shall be paid nothing from this estate beyond what was disbursed to him previously [under the Trust]." The actual net result, given that Goldstein had been overpaid $14,835.42 from the Trust, see *supra* note 3, was a trial court award to Goldstein of personal representative fees in that amount, approximately a twenty-five percent (25%) reduction from his requested compensation. If, as the trial court stated, however, Goldstein is to bear the "same burden" as Riggs for failure to disclose the final account, a one-half reduction in requested fees, he should have been entitled to no more than $10,000 of his requested $20,000 personal representative compensation. If Goldstein is entitled to more, *i.e.*, if he is to be sanctioned less than Riggs, the trial court must make clear with specific findings why this is the case. Otherwise, if Goldstein is in possession of funds to which he is not entitled, they must be returned to the estate.

### C. Attorneys' Fees

We now turn to the more challenging issue on appeal. The trial court was presented with two requests for attorneys fees. In one, the legatees asked that the fees they incurred in bringing the *Rearden* litigation be assessed as a sanction against the appellees, who breached their fiduciary duty to the legatees by failing to turn over the Trust account. In essence, the legatees claim that, but for the appellees' breach, the *Rearden* litigation would not have been brought and they would not have incurred the expense. The other request is made by the appellees, who filed for payment from the Estate, pursuant to D.C.Code § 20–752, the fees expended by the attorneys representing them as personal representatives.

Although both requests are for work performed in connection with the *Rearden* litigation and raise similar issues, they are considered under different standards. The legatees' fee request is an exception to the "American Rule," under which litigants, win or lose, bear their own fees. *See, e.g., Urban Masonry Corp. v. N & N Contractors, Inc.*, 676 A.2d 26, 33 (D.C.1996). We have recognized a narrow exception to this general rule in the case "where a party ... withholds action to which the opposing party is patently entitled ... because of a fiduciary relationship, and does so in bad faith, vexatiously, wantonly, or for oppressive reasons...." *1901 Wyoming Avenue Cooperative Ass'n v. Lee*, 345 A.2d 456, 464–465 (D.C.1975). The bad faith exception "is intended to punish those who have abused the judicial process and deter those who would do so in the future," but a court must not penalize a party "for maintaining an aggressive litigation posture." *Synanon Foundation, Inc. v. Bernstein*, 517 A.2d 28, 37 (D.C. 1986). In rejecting the legatees' fee request, the trial court noted that, in their capacity as trustees, the appellees did not owe a fiduciary obligation to the legatees. Additionally, the court specifically found that it did "not regard the defense of the civil action to have been maintained in 'bad

faith' " because there was "nothing vexatious about defending an allegation or demand that was deemed to be meritless by both the trial court and the appellate court." The legatees urge the court to apply the equitable exception to the American Rule in this case because of the appellees' breach of fiduciary duty, in their capacity as personal representatives, to turn over the final Trust account to the legatees.

The appellees' fee request, on the other hand, is governed by D.C.Code § 20–752, which provides that a personal representative who prosecutes or defends a proceeding "in good faith and with just cause" is entitled to "necessary expenses and disbursements relating to such proceeding." [10] Therefore, a determination that the appellees' litigation posture was not in bad faith or vexatious for purposes of the imposition of sanctions as an equitable exception to the American Rule does not necessarily answer whether appellees are entitled to reimbursement of their own legal fees, which must be supported by a showing of "good faith and just cause." The probate court found that "[i]t is fair to say that the bulk of the attorneys' fees that were incurred by the Co Personal Representatives are the direct result of having to defend this estate against litigation filed by the legatees in their effort to probe into the Trustee compensation." The trial court found that "all attorney's fees were neces-sary and reasonable," having been "convinced that the Co Personal Representatives had a duty to monitor and protect the interests of the estate in the lawsuit that was technically filed against the Trustees." According to the probate court, "[s]uch fees are a basic bill that must be paid by the estate." [11]

■ We review the trial court's award of attorney's fees for abuse of discretion, whether they are awarded as an imposition of sanctions, *see Breezevale v. Dickinson*, 759 A.2d 627, 640 (D.C.2000) (rehearing en banc granted on January 31, 2001), or as reimbursement for work as personal representative, *cf. Godette*, 592 A.2d at 1032 (reviewing payments by a personal representative under a "clearly erroneous" standard). "[A] discretionary decision based on an 'erroneous premise' cannot stand." *Breezevale*, 759 A.2d at 640.

■ In denying the legatees' request for sanctions, the trial court relied primarily on the notion that, as we noted in *Rearden*, the legatees stood in a fiduciary relationship with the personal representatives of the Estate, not the trustees, because the terms of the Trust "contemplated the establishment of a new fiduciary relationship between the personal representatives and the legatees under the will, independent of the relationship between the trust and the personal representatives of the settlor."

---

10. D.C.Code § 20–752 (1997 Repl.) states that:

> when a personal representative or a person nominated as a personal representative defends or prosecutes in good faith and with just cause any proceeding relating to the decedent's estate, whether successful or not, such personal representative shall be entitled to receive from the estate any necessary disbursements relating to such proceeding.

11. Article Three of the Trust gave the trustees the power, as they "in their absolute discre-tion, deem advisable in the best interest of the Grantor: ... (I) To employ legal ... advisors and to pay them such remuneration as the Trustees in their absolute discretion, shall deem proper." Appellees do not appear to have requested, and the trial court did not grant, attorney's fees pursuant to the Trust instrument, presumably because the Trust had by its terms terminated upon Ms. King's death and the fees requested were incurred subsequent to that event. We review the case as it comes to us.

677 A.2d at 1037. In the *Rearden* litigation, the legatees brought suit against appellees, and appellees defended, in their capacity as trustees of the Trust. Thus, we held the legatees had no standing to sue. *See id.* Because the lawsuit was brought against appellees in their trustee capacity, the trial court found that the appellees' defense of the litigation as trustees was not in bad faith.

We have held, however, that sanctions may be imposed even if the appellees prevailed in the litigation if a party's tactics are illegal or unethical. *See Breezevale,* 759 A.2d at 640. Although we noted in *Rearden* that "[c]onceptually, the roles of appellees as trustees and as personal representatives are entirely distinct, and it is helpful to analyze their status as if entirely distinct entities," 677 A.2d at 1036, that statement was made in the context of deciding the purely legal issue in that lawsuit, the standing of the legatees to sue the trustees *qua* trustees. In the context of the requests for attorney's fees, which must be based on an evaluation of the appellees' conduct of the *Rearden* litigation, however, the court cannot blind itself to the fact that throughout that litigation appellees's responsibilities as trustees had been superseded, as of Ms. King's death, by their duties as personal representatives.[12] The question is not simply, therefore, whether the trustees had a good legal defense to the lawsuit. That the trustees eventually prevailed on the legal issue of the legatees' lack of standing is not responsive to the question whether the trustees *should* have continued to defend the lawsuit on this ground, with its concomitant anticipated drain on the assets of the Estate, when they easily could have mooted the cause of the litigation and avoided the financial burden on the Trust (and

eventually, the Estate), simply by meeting their obligations as personal representatives. It is not enough in this case for appellees to say that wearing their "trustee hat" they won a lawsuit to establish a legal proposition that benefitted neither the Trust nor the Estate, to which they owed a fiduciary duty; appellees wearing their "co-personal representative hat" could have obviated the need for the litigation altogether by demanding from the trustees (themselves) and turning over to the legatees, the final account of the Trust in the first instance.

We should not be understood as saying that fiduciaries may not be reimbursed for defending lawsuits by persons to whom they owe a fiduciary obligation. Such lawsuits are likely to constitute a significant part of the litigation against fiduciaries. But in defending such litigation, fiduciaries cannot be oblivious to their obligations to the claimants. In this case, appellees were named as co-personal representatives prior to the *Rearden* litigation even being commenced, resulting in an overlap of roles and responsibilities, and appellees therefore were simultaneously defending the *Rearden* suit as trustees, but monitoring it on behalf of the Estate as co-personal representatives. In that circumstance appellees were not free to act as if they were solely trustees when they also were getting paid in their capacity as personal representatives. By appellees' own declaration filed in response to the probate court's order, the final account was prepared and mailed to co-personal representative Malins in November, 1993, merely two months after the *Rearden* litigation was filed against appellees, as trustees, to compel production of the accounting. As we noted in *Rearden,* it is "inexplicable" that appellees did not timely turn the final ac-

---

12. The trial court was well aware of the appellees' dual responsibilities and noted that the Estate and the Trust were "inextricably connected in this controversy."

count of the Trust over to the legatees. *See* 677 A.2d at 1037 n. 11. The duty to do so as a personal representative was clear prior to *Rearden.* *See* D.C.Code § 20–733 (1997 Repl.) ("Nothing shall excuse a personal representative from the duty to mail or deliver inventories and accounts to each interested person ..."). As the probate court noted in its order to appellees as co-personal representatives to turn over the final account of the Trust to the legatees, rendered prior to our *Rearden* decision, information in the account of a decedent's estate as to the value of assets, receipts, and transfers, *see* D.C.Code § 20–723, would "certainly include precise information as to the amount and source of money that flows into the estate-from whatever the source may be." *Cf.* D.C.Code § 20–711 (duty of personal representative to file inventory). If we assume, for the sake of discussion, that the personal representatives and trustees in this case were different entities (for example, if appellees were the trustees but the personal representatives were Bank X and Mr. Y), the fiduciary responsibilities of the personal representatives in this case are set in sharp relief. An independent personal representative would have demanded the final Trust account from the trustees and intervened to dismiss the litigation, or at least made the judge aware that the legatees would receive what they desired, *i.e.,* the

final Trust account, so as not to dissipate the assets of the trust/estate with unnecessary legal expenses. *See* THOMAS E. ATKINSON, LAW OF WILLS 648–49 (2d ed. 1953) ("The same measure of diligence is required in the care of the estate's property as in its collection.... [T]he executor and administrator is charged with the duty of exercising good faith and reasonable care and diligence in the preservation of the estate's assets."). At the very least, the co-personal representatives had a duty, in fulfilling their monitoring responsibility, not only to make sure that the lawyers were doing an adequate job defending the Trust to the extent that the defense affected the Estate, but to mitigate the cost of the litigation to the Estate.[13]

We therefore remand the case so that the trial court can address the unanswered question whether it is "bad faith" or "good faith and just cause" for a personal representative, which is also a trustee, to vigorously defend a lawsuit, *as trustee,* when *as personal representative* it had an obligation to turn over to the plaintiffs in the lawsuit, and was in possession of, the very thing being sought by the lawsuit. In addressing these questions the trial court should bear in mind that, even if the legatees do not meet their burden of showing that an equitable exception to the American Rule should be applied because the

**13.** The probate court criticized Malins, who was not also a trustee, because she "was the only Co Personal Representative who should not have hesitated (1) to demand a formal, final account of the Trust and (2) to take action against the Trustees if they failed to honor her demand." Although the trial court's assessment that Malins failed to act independently in her role as personal representative is correct, the probate court apparently used the fact of the appellees' dual roles as trustees and personal representatives to hold Malins to a higher standard than it did appellees. We disagree with this reasoning. If anything, the fact of the conflict would heighten appellees' fiduciary responsibilities because their independence is potentially compromised. Having taken on dual conflicting roles, appellees are not relieved of their responsibility to act independently in the fiduciary roles which they occupy. Appellees, no more and no less than Malins, had a duty to demand a formal account from the Trust and take appropriate actions concerning the Trust accounting if it was not forthcoming. *See* D.C.Code § 20–701(a) (1989 Repl.) ("A personal representative is a fiduciary who ... is under a general duty to settle and distribute the estate ... as would a prudent person in such matters.")

appellees acted in bad faith, that does not necessarily mean that the appellees have met their burden of showing the statutory requirement of "good faith and just cause," a pre-requisite to their request for attorney's fees as personal representatives' under D.C.Code § 20–752.

■ Further, in awarding appellees' fee request, the trial court determined that the "bulk" of the appellees' legal fees of approximately $125,000 were incurred in the exercise of their duty, as personal representatives, to monitor the *Rearden* litigation on behalf of the Estate, but did not parse the submission supporting the fee request nor explain the need for the extensive monitoring represented by a fee of that magnitude. If, as the trial court noted, the litigation had been "technically filed" against the Trustees-by which we understand that appellees were being sued in substance in their then capacity as personal representatives of the Estate-the legatees' standing to sue would have been undisputed and there would have been no need for additional monitoring on behalf of the Estate. *See* D.C.Code §§ 20–101(d)(1), 107. In any event, without further explanation, it is difficult on the present record to perceive a basis for the need for "monitoring" by counsel for appellees as personal representatives, who were the same lawyers representing them in their trustee capacity.[14]

\* \* \*

In sum, we remand the case for the trial court to make further findings and for any appropriate adjustments or redetermina-tions of the awards of compensation and attorney's fees. With respect to Goldstein's fees as personal representative, the trial court should make findings whether Goldstein is to receive more than one-half of the requested amount, and, if so, why. With respect to the requests for legal fees, the trial court is to consider whether, poorly misconceived as the legatees' lawsuit may have been as a legal matter, the appellees' actions in defending the lawsuit and failing to take required action that would have ended the litigation violated the appropriate standards. Viewed through the legatees' fee request as an equitable exception to the American Rule, the issue is whether the legal fees incurred by the legatees were "for work and expense attributable to the guilty party's bad faith endeavors." *Synanon*, 517 A.2d at 38. Through the prism of the appellees' request for fees under D.C.Code § 20–752, the inquiry is whether appellees have shown that their efforts in the *Rearden* litigation were in good faith and for just cause. As to both, it is significant that the appellees had dual roles, as trustees and as personal representatives, and that in the latter capacity they had an obligation to disclose the final Trust account to the legatees. In addition, with respect to the appellees' request for attorney's fees resulting from what the trial court described as the necessary "defense-related participation" of appellees, the trial court is to consider and make findings on whether, and to what extent, the fees were incurred

---

**14.** Article Six of the Trust provides that the Trustees shall not be held liable for "any mistake in judgment or for any decrease in value of or loss to the principal ... except for bad faith *or gross negligence* on the part of the Trustees." (Emphasis added.) The trial court's determination that the trustees' defense of the *Rearden* litigation was not in bad faith does not address whether appellees were grossly negligent. The trial court did determine that the attorney's fees were "well earned" and "not unreasonable," and that the fiduciaries, not the lawyers, were responsible for the nondisclosure. The issue, therefore, is not whether the lawyers should be compensated, but whether by the fiduciaries or the Estate.

by Riggs and Goldstein in furtherance of their duties as co-personal representatives.

This case is

*Remanded.*